A90A0538. USSERY v. THE STATE.
(393 SE2d 522)

BANKE, Presiding Judge.

The appellant was charged with improper lane usage, driving while under the influence of alcohol to the extent that he was a less safe driver, and driving with a blood-alcohol level of .12 percent or more by weight. A jury found him guilty on both the DUI counts while acquitting him on the charge of improper lane usage; however, he was only sentenced for driving with a blood-alcohol content of .12 percent or more. In this appeal from the denial of his motion for new trial, he enumerates 25 alleged errors committed by the trial court, many of which are redundant. *Held*:

1. The appellant contends that his acquittal on the improper lane usage charge was inconsistent with his conviction of DUI, because without a finding of improper lane usage there could be no finding that his driving ability was impaired. Since the trial court did not enter a conviction on the DUI count which was predicated on impaired driving ability, the issue of whether there was sufficient evidence to support a conviction on that count is moot. Cf. *Lester v. State*, 253 Ga. 235, 237 (2) (320 SE2d 142) (1984). There was, however, ample evidence, apart from that dealing with the lane usage charge, from which the jury could have concluded that the appellant's driving ability was impaired. He was administered two separate intoximeter, or breathalyzer, tests. The first, performed 20 minutes after he was stopped, resulted in a reading of .12 grams; while the second, performed 20 minutes after the first, resulted in a reading of .10 grams. Either of these readings was sufficient under OCGA § 40-6-392 (b) (3) to support a finding that the appellant "was under the influence of alcohol as prohibited by paragraph [] (1) . . . of subsection (a) of Code Section 40-6-391. . . ." In addition, there was testimony that the appellant's eyes were red and glassy, that he had a strong odor of alcohol about his person, that his speech was slurred, and that he was unsteady on his feet to the extent that he had to hold onto his vehicle for balance.

2. The appellant contends that a reasonable doubt as to whether the alcohol content of his blood was .12 percent or more was created as a matter of law by the reading of .10 which he received on the second intoximeter test. This contention is also meritless. As previously indicated, the second test was not performed until 20 minutes after the first, by which time 40 minutes had elapsed since the appellant was stopped. Thus, the jury might reasonably have attributed the

lower reading on the second test to the passage of time. The evidence, considered as a whole, was sufficient to enable a rational trier of fact to find the appellant guilty beyond a reasonable doubt of the offense of which he was convicted. See generally *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. The appellant contends that the trial court erred in allowing one of the police witnesses to refresh his recollection from a written document without any showing that he had prepared the document himself. The law requires no such showing. Pursuant to OCGA § 24-9-69, "[a] witness may refresh and assist his memory by the use of any written instrument or memorandum, provided he shall finally speak from his recollection thus refreshed or shall be willing to swear positively from the paper." Accordingly, so long as a witness is testifying from personal recollection, he is "entitled to have his memory refreshed by a document which he himself did not prepare. (Cit.)" *Byrd v. State*, 182 Ga. App. 284, 287 (355 SE2d 773) (1987). Accord *Mabry v. Henley*, 123 Ga. App. 561, 566 (181 SE2d 884) (1971).

4. The appellant complains that "[t]he arresting officer failed to advise [him] that he could have a urine test or a blood test after he took the test the arresting officer requested [him] to take." While the appellant did interpose an objection at trial to the introduction of the intoximeter test results, he did so not on the ground that the arresting officer had failed to advise him of his right to an independent test but on the ground that the state had failed to lay a proper foundation for this evidence by proving "how the machine works" and by showing that the officer who had administered the tests was properly certified to do so. Consequently, this enumeration of error (which does not even purport to address any ruling or other action on the part of the trial court) presents nothing for review. We note, however, that it was in fact established during the trial that the appellant had been advised of his right under OCGA § 40-6-392 (a) (3) to receive an independent chemical test from a person of his own choosing.

5. The appellant contends that the trial court erred in not declaring a mistrial based on the state's failure to reveal to him, in response to a *Brady* motion, the identity of an officer who had been present at the scene of his arrest but who was not called as a witness at trial. When asked by the court how his client had been harmed by this failure, appellant's counsel replied as follows: "Whatever he knew may have been helpful. How do I know what he knew? I don't know." This enumeration of error is accordingly without merit. " 'The defendant has the burden of showing that the evidence withheld "so impaired his defense that he was denied a fair trial within the meaning of the *Brady* rule." (Cits.)' . . . 'Mere speculation that the items the appellant wishes to review possibly contained exculpatory information does not satisfy (the defendant's) burden (of showing that the

evidence is material.)' [Cit.]" *Williams v. State*, 178 Ga. App. 581 (3), 586 (344 SE2d 247) (1986).

6. The appellant testified that he had consumed some cough medicine containing alcohol and codeine on the day in question and that he believed this could have generated a false reading on the intoximeter. He contends that the trial court accordingly erred in refusing to give the following requested charge: "I charge you that should you find as a matter of fact that the defendant in this case had been drinking alcoholic beverages but that he had not consumed alcohol sufficient to raise his blood alcohol content to .10 and that the defendant had consumed a prescription which contained alcohol and that the prescription alcohol consumed did not contribute to the blood alcohol as measured by the intoximeter but lingered in the defendant's mouth area and contributed to a higher reading on the intoximeter then in that event you would be authorized to disregard the readings of the intoximeter."

It is not apparent why the ingestion of the alcohol contained in the medicine would not have affected the appellant's blood alcohol level. There was no expert testimony on the issue, and the appellant's testimony that his believed consumption of the medicine might have resulted in a false reading on the intoximeter was completely speculative. It follows that there was no evidentiary basis for the requested charge.

7. We have considered the appellant's remaining enumerations of error and have determined that they establish no ground for the reversal of his conviction.

*Judgment affirmed. Birdsong and Cooper, JJ., concur.*

DECIDED APRIL 17, 1990.

*John L. Watson, Jr.*, for appellant.
*Keith C. Martin, Solicitor*, for appellee.